## GUITAR et al. v. WHEELER et al.

### No. 2481.

Court of Civil Appeals of Texas. El Paso.

Jan. 29, 1931.

Rehearing Denied March 5, 1931.

326

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellants.

Clyde E. Thomas and Martelle McDonald, both of Big Spring, for appellees.

WALTHALL, J.

Myrtie Wheeler, for herself and as next friend of Luther Wheeler and Alma Wheeler, minors, and Bernice Vale, joined by her husband, Jack Vale, plaintiffs, brought this suit against John Guitar, Sr., John Guitar, Jr., and Repps B. Guitar, individually, severally, and in their respective capacities, as trustees for, and owners and parties at interest in the Guitar Trust Estate, together with others named as parties at interest in said estate, and W. B. Tidwell, to recover damage

for the death of George S. Wheeler as the result of being struck by an automobile driven by W. B. Tidwell; the petition alleging that Tidwell was an employee of the Guitars above named in driving said car, and that in driving the car he negligently caused the car to strike Wheeler, thus causing his death.

Defendants, except Tidwell, answered by general denial, alleged that Tidwell was not in their employ at the time of the accident causing the death of Wheeler, but was on a mission of his own, and was not in the performance of any duty he owed defendants; defendants pleaded contributory negligence on the part of Wheeler.

Tidwell answered by general denial and contributory negligence of Wheeler.

On special issues submitted, the jury found that Tidwell, at the time and place and in the manner testified to, was guilty of negligence in the operation of his car, and that such negligence was the direct and proximate cause of the death of Wheeler; that Tidwell, on the occasion in question, was acting within the scope of his employment as foreman of the farm of defendants named, trustees. The jury stated the damages found; the jury also found that Wheeler was not guilty of contributory negligence at the time of the accident in which he was killed.

The court entered judgment in favor of plaintiffs against Tidwell individually, and against the three Guitars named in their respective capacities as trustees of the Guitar Trust Estate, but not personally. The Guitars, as trustees of said estate, prosecute this appeal.

Opinion.

The case must be reversed on appellants' propositions 5, 6, and 7, but, in view of another trial, we think best to express our view on the other issues presented.

Appellants submit that the evidence is wholly insufficient to show that at the time of the accident causing the death of Wheeler, Tidwell, the driver of the car that struck Wheeler and killed him, was engaged in any business of appellants, or was acting within the scope of his employment, or was then engaged in any business for which he was employed by appellants, and, for reasons stated, that it was error to refuse to give appellants' peremptory charge instructing the jury in their favor.

Appellees' petition alleged that Tidwell, at the time and place of the accident, and in driving the car that struck and killed Wheeler, was the agent of and in the employ of appellants and in the due course of the business for which he was employed.

The court submitted, and the jury found, that Tidwell at the time of the accident was acting within the scope of his employ-

ment, and that finding is the basis of appellants' liability. The proposition necessitates a review of the evidence as to the service Tidwell was performing for appellants in driving the car at the time of the accident. A general employment of Tidwell by appellants, as foreman, on the farm operated by appellants, would not of itself be sufficient to show appellants' liability; the evidence must show that in driving the car at the time of the accident Tidwell was performing some service for appellants within the scope of his employment as foreman of the farm.

■ The facts, as we view the record, are uncontroverted, and are as follows: The circumstances under which Wheeler was killed occurred on the 26th day of December, 1928. Tidwell at that time was in the employ as general foreman on the large farm of the Guitar Trust Estate, in Howard county, under the management and control of appellants, as trustees; the estate being a family affair and owned by the members of the Guitar family. The Guitar farm is situated some fifteen miles north by west from Big Spring. In the morning, on the day in question, Tidwell, with his wife and children, drove to Big Spring in an automobile. The purpose of his trip to Big Spring on that occasion was that his wife might do some shopping, but on no business for his employers, the Guitars. Shortly after reaching Big Spring, Tidwell met a Mexican man named Billaba. The meeting with Billaba was casual and not by previous appointment. Billaba asked Tidwell about some grubbing to be done on the Guitar farm. The result of the conversation was that Tidwell, in the morning of that same day, took Billaba in the car out to the farm where the grubbing was to be done, taking his family with him at the same time. It was a part of his duty as foreman of the Guitar farm to have the grubbing done, and, in taking Billaba to the place of the grubbing, Tidwell was in the performance of his duty as foreman. After showing Billaba the grubbing to be done, Tidwell took his family on to their home, taking Billaba with him, and then, in the afternoon of the same day, returned to Big Spring in the car, bringing Billaba with him.

The evidence is not clear as to whether Tidwell, in taking Billaba to the place of the grubbing, agreed to bring him back to Big Spring, but from the evidence we find that he did so agree; it is clear that he did bring him back.

After remaining in Big Spring several hours at that time, Tidwell, while returning to his home in the car on the public highway, struck and killed Wheeler. The question presented is: In returning to his home, was Tidwell at that time, in the course of his employment as an employee of appellants? We think the facts stated, borne out by the evidence, were sufficient to take the issue to the jury. Had Tidwell left Billaba at the farm, or, having brought Billaba by Big Spring, had the accident occurred at Big Spring after Tidwell had returned Billaba to Big Spring, and before he had started on his return to his home, a different question would be presented. We think it was within the scope of Tidwell's employment in returning to his farm headquarters home after having taken Billaba back to Big Spring. It could hardly be said that after returning Billaba to Big Spring Tidwell's return trip home was for his own convenience. Pierce-Fordice Oil Ass'n v. Brading (Tex. Civ. App.) 212 S. W. 707. It was an issue for the jury and not the court.

It is true, as suggested by appellants, that, while Tidwell was at Big Spring and before starting on this return to his headquarters, he did turn aside from his master's service, but the negligent act causing the death of Wheeler did not occur while he was so turned aside, but after he had resumed his service and was on his home trip.

■■ We have reviewed the cases cited by appellants and think none of them are in point on the facts here. The liability of appellants is to be determined by the application of the general principles of the law of master and servant. As suggested by appellants, the burden is upon appellees to show that Tidwell did the negligent act causing the death of Wheeler while acting within the scope of his employment. The act must be done in furtherance of the master's business and for the accomplishment of the object for which Tidwell was employed. Beyond the scope of his employment the servant is as much a stranger to the master as any third person.

The court instructed the jury: "Special Issue No. 3: Do you find from a preponderance of the evidence that W. B. Tidwell, in making the trip to Big Spring and back to his farm on the afternoon of December 26th, 1928, was acting within the scope of his employment as foreman of the farm of defendants, John Guitar, Sr., John Guitar, Jr., and Repp Guitar, Trustees? Answer yes or no."

Appellants suggest that the charge was duplicitous, that it submits a mixed question of law and fact, was confusing and misleading, in that it gives to the jury too wide latitude to determine the term "scope of employment," and does not confine the jury to the issue actually made as to whether or not Tidwell was, at the time of the accident, engaged in furtherance of appellants' business or any work of appellant.

Except as to the duplicity feature of the charge, which we will discuss later, we do not think the objections are well taken. By the verbiage of the charge, the jury is confined to the trip made "in the afternoon" of that day. All the evidence shows that the first trip Tidwell made was with his family and was in the

forenoon, and that the trip with Billaba, both going to Big Spring and returning to his home, was in the afternoon; the circumstances of the afternoon trip were the only ones involved here, and the only ones referred to in the charge. .

We think it was proper to submit the afternoon trip as a unit, since the jury must consider the circumstances of that entire trip in determining the point submitted, whether at the time of the accident Tidwell's trip in returning to his farm headquarters was an act within the scope of his employment as foreman of the farm. If we are not mistaken in that, the charge was not objectionable other than being duplicitous. The fact of returning Billaba to Big Spring under the circumstances here·is essential in determining the point at issue.

■■ We think the expression used in the charge "within the scope of his employment" is not a mixed question of law and fact, as submitted by appellants; nor do we think the expression should necessarily have been defined by the court in submitting the special issue. We have found no case so holding. No general rule can be formulated which will determine in each case whether the servant was acting by reason of, or within the scope of his employment; the authority from the master generally being gathered from the surrounding circumstances in evidence. C. J. vol. 39, p. 1283, under par. 1472. Where the servant was doing some act in furtherance of the master's business and which act was his duty to his master to perform, such as returning in his automobile under the circumstances in evidence, it would be for the jury to determine from all the evidence, and not the court as a matter of law, whether such returning to his home would be an act within the scope of his employment. In answer to the question, "Was it your duty to take that Mexican (Billaba) out to see that stuff (grubbing) and bring him in here (Big Spring)?" Tidwell answered: "It was my duty, yes. That is a fact, that grubbing out there was on the Guitar ranch, yes. I was wanting that grubbing ·done, yes. * * * I was having it done to get wood. * * * I was not going· to pay for the grubbing out of my own pocket, no. Mr. Guitar was to pay for the grubbing, I suppose."

■ The court was not in error in refusing to give appellants' charge No. 1, a peremptory charge in appellants' favor. The evidence was sufficient to take the case to the jury. Nor was it error to refuse submitted charges 2 and 3, the first asking whether Tidwell was engaged in any business for appellants after he had arrived at Big Spring in the afternoon of that day, and up to the time he started home. It was immaterial. No. 3 inquired whether Tidwell, at the time of the accident was "actually engaged in any business in behalf of defendants." The issue was sufficiently submitted by the court in the court's charge No. 3, above stated.

■ The court refused appellants' charge No. 4, asking whether, at the time of the accident, "Tidwell was engaged in his own business and for his own account." Appellants contend that the charge submitted their theory of the case, which had not been done by the court's charge. The theory of appellants is that at the time of the accident Tidwell was engaged in a mission of his own, in which appellants were not concerned, and that the affirmative of that issue should have been submitted. We think it was not error to refuse the charge. Whatever other business Tidwell might have had of his own and for his own account, it was wholly immaterial where the uncontroverted evidence shows, as here, that at the time of the accident he was also acting within the scope of his employment as submitted in the court's charge.

We have discussed issue No. 1 submitted by the court, but only in determining whether the motion for a new trial should have been granted on the grounds stated in the first proposition.

The case should have been submitted to the jury on some one or more of the negligent acts complained of in appellees' pleading, and upon which evidence was offered. This was not done, and appellants assigned error to such failure in their fifth proposition.

In submitting the case to the jury, the court did not submit any one or more of the negligent acts charged as a guide to the jury in determining whether there was negligence on the part of the driver of the car in causing the death of Wheeler; nor did the court define negligence. The failure to define negligence is assigned as error.

We will discuss the two propositions together. Article 2189 of the statute provides that the case shall be submitted upon issues raised by the pleadings and the evidence in the case. The special issues must be submitted distinctly, and, where more than one issue is submitted, they must be submitted separately.

The same article of the statute provides that in submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to pass upon and render a verdict on such issues. The court submitted the issue of negligence generally, but omitted to define negligence.

Appellee complained of several acts of negligence as causing the collision resulting in the death of Wheeler, viz.: Excessive speed; intoxication of Tidwell, the driver; violation of the law in turning to the right,· so managing his car as not to keep it in control on the highway; not keeping a lookout; not putting on the brakes prior to the collision in an effort to avoid it.

■ The court's charge is as follows: "Special Issue No. 1: Do you find from the preponderance of the evidence that the defendant, W. B. Tidwell, at the time and place and in the manner testified to herein was guilty of negligence in the operation of his car, on the night of the 26th of December, 1928? Answer yes or no."

Appellants objected, to the giving of the charge as duplicitous, and as giving the jury no guide to determine the issue submitted. One of appellants' grounds for a new trial was that the issue as submitted failed to confine the finding of the jury to the issue raised by the pleading and evidence and permitting the jury to speculate as to whether defendant (Tidwell) was guilty of negligence. In neither the objections to the court's charge nor in the motion for a new trial do appellants specifically point out the omission to define negligence.

The charge, in our opinion, is affirmatively erroneous, in that it does not submit any one of the negligent acts charged, but submits negligence generally, and does not define negligence to the jury. No special charge was submitted which undertakes to submit a proper charge or define negligence.

The charge is duplicitous, and, whatever may be said of the lack of definiteness in pointing out objections to the charge, it does specifically point out that the charge is duplicitous, by which we understand appellants to mean that the charge should submit to the jury separately and singly such acts of negligence as are pleaded and upon which evidence was offered, instead of, as was done, submitting to the jury, Was Tidwell guilty of negligence generally in the operation of the automobile at the time and place of the accident? Without discussing the case at length, our Supreme Court, in Gulf, etc., Ry. Co. v. Conley, 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183, and the Commission of Appeals, Section B, in Robertson & Mueller v. Holden, 1 S.W.(2d) 570, hold that, where the charge is merely defective or incomplete, or is affirmatively erroneous, an objection which sufficiently specifies the error will preserve the point on appeal, without the necessity of again directing the court's attention to the same subject by a special charge.

For the reason that the charge does not properly submit the issue of negligence to the jury, the case must be reversed and remanded. On another trial negligence should be defined.

■ The court charged the jury: "What damages, if any, do you find that the plaintiffs herein should recover that would fairly compensate the plaintiffs for the loss of their husband and father? Answer in dollars and cents."

In this case the recovery as to appellants would be the pecuniary loss to appellees by reason of the death of their husband and father.

The petition does not allege the ages of George Wheeler, or of the wife, Myrtie, appellee, and does not allege the ages of the minor children. The evidence shows that Wheeler at the time of his death was 37 years old, his physical condition good, a stout, strong, and normal man. We have not found in the record any statement as to the age of the appellee Myrtie Wheeler. One of the children, Bernice, married after the death of her father and before the trial of the case. The evidence shows that Wheeler was a farmer, and at times worked off the farm, and that his average earnings for the last four or five years of his life would "be about three or four thousand dollars a year, each year, farming and working out." Mrs. Wheeler testified: "He was supporting me and my children." We have not found the life expectancy of either Wheeler or his wife, Myrtie, in the record. Nor does the evidence show the amount of money Wheeler bestowed upon his family for any purpose for any given length of time.

■ Where the jury finds for the plaintiffs in cases such as this, the recoverable damage is such sum as, if paid in hand at the time of the judgment, would fairly compensate appellees for the pecuniary loss they would reasonably have received from decedent during his life, which, in case of minor children, including the reasonable pecuniary value of the nurture, care, and education they would have received from decedent during their minority, if any, had he lived, but that no allowance should be made for grief or sorrow suffered on account of decedent's death, or loss of his society, affection, companionship, or physical or mental pain suffered. Texas, etc., Ry. Co. v. Walker, 58 Tex. Civ. App. 615, 125 S. W. 99.

■ Now, we do not mean to hold that it is essential to prove that deceased actually contributed anything to the support of his wife and minor children for the law charges him with the duty of their support, a valuable right that can be enforced, and of which right they are deprived by his death; nor are they limited in the amount of recovery to such sum or sums of money as deceased probably would have contributed to them. The evidence shows that the deceased had bought land and was buying additional land, and was paying for it. Where the court states the correct rule for the amount of the recovery, as shown by the pleading and evidence, we think it would not be error in the charge to omit to state the facts the jury might consider in estimating the lump recovery.

For reasons stated, the case must be reversed and remanded, and it is so ordered.

### On Motion for Rehearing.

Appellants most earnestly contend that we are in error in holding that Tidwell was acting within the scope of his employment on returning to the Guitar farms after he had brought Billaba to Big Spring. Their contention is that Tidwell's employment ended at Big Spring, on his return with Billaba, and that on his return trip from Big Spring to the Guitar farm he was not acting for his employers in the sense that his employers would be responsible for Tidwell's negligence on his return trip, if he was negligent, in causing the death of Wheeler. We will further consider only that feature of the motion.

Appellants insist that our holding is not in harmony with Cunningham v. Railway, 51 Tex. 510, 32 Am. Rep. 632, Cunningham & Ellis v. Moore, 55 Tex. 373, 40 Am. Rep. 812, and Trachtenberg v. Castillo (Tex. Civ. App.) 257 S. W. 657.

In Cunningham v. Railway, Cunningham sued the International Railroad Company for personal injuries received while a passenger on the railroad. The defense of the railroad company was that the section of the road upon which the injury occurred was then in the exclusive possession and control of independent contractors and was then being operated for their benefit, and not by the servants of the International Railroad Company, and that the road was not then open for transportation of passengers, and that Cunningham as a passenger on such construction train then being operated by the independent contractor was not a passenger of defendant. The question discussed by the court was on the demurrer to that answer; that is, the liability of the railroad company for the act of the independent construction contractors. The court held there was a marked distinction between the liability of the master for the acts of an ordinary servant in the usual scope of his duties as such, and that of an employee for the acts of an independent contractor, and pointed out the reason for the difference in liability.

In Cunningham & Ellis v. Mrs. Kate A. Moore, appellants were the lessees of the penitentiary and as such had custody and control of the convicts. Spencer C. Moore was a convict, and it was alleged that he was in charge of the lessees of the penitentiary, and that, while occupying a bunk erected by appellants, lessees, the bunk gave way and fell, from which he received injuries from which he died. The suit was for damages against appellants as lessees. The court, after quoting certain articles of the statute and rules pertaining to the control and management of the penitentiary, among them that "no lease shall be made by which the control of the prisoners, except as to a reasonable amount of labor, shall pass from the state or

its officers to the lessees," etc., said, the testimony shows that, under the statute quoted, J. T. Echols, not one of the lessees, was appointed by the commissioners sergeant in charge of the convict camp to which convict Moore belonged, and that under his supervision and by direction of the commissioners the bunks in question were constructed, and that the convicts when turned in at night were under the exclusive control of Sergeant Echols, and that the lessees had no right to order the convicts off the bunk, by whose weight it was broken. We see no application of the facts in that case to the facts of the instant case.

The Trachtenberg-Castillo Case is in point and was decided by this court. The writ of error was dismissed by the Supreme Court. The questions of fact are lengthy. We may state them briefly. The motortruck at the time of the accident belonged to appellants, and on the day and at the time of the accident was being driven by Tom Allen. Tom Allen was not in the regular employment of appellants, but was using the truck at times for his own use, and at times for the use of appellants, when called on for service by appellants. Tom Allen was permitted by appellants to keep the truck in his possession at all times, and to use the truck in going to and returning from his work, whether working for others or for appellants. On the day of the accident, Tom Allen had been working for appellants at their call, and in doing so used the truck, and at the end of that day he had finished his work for appellants and had not been called for further service for appellants. On the day of the accident and prior thereto, appellants had paid Tom Allen for his service and he had been discharged from their service until he should be again called for further truck service. While Tom Allen was returning the truck to the place where he kept it, the accident occurred. This court concluded from the undisputed evidence that Tom Allen was not in the employ of appellants in driving the truck to his home from the place where he had finished his service to appellants and had there been paid off and discharged. In deciding the case, we referred to Cunningham v. Ry. and Cunningham v. Moore, supra, not as being analogous in their facts, but as stating the test of responsibility of appellants under the facts of that case, Tom Allen, at the time of the accident, not being in the employ or under the control and direction of appellants after his discharge. In that case the court held that under the facts the relationship of employer and employee did not exist at the time of the accident.

In Berryman on Law of Automobiles, § 613, p. 688, in discussing the meaning of the phrase "in the course, or scope, of his employment" when used relative to the acts of a servant, it is said, "The test is whether

the act done was in the prosecution of the business in which the servant was employed to assist."

In other words, was Tidwell, at the time of the accident, engaged in serving appellants, or was he, in returning to the Guitar farm, after delivering Billaba at Big Spring, in the exercise solely of his own pleasure. We think his trip in returning to his place of employment, after delivering Billaba, was as much in the service of appellants as in going to Big Spring. We think it immaterial under the facts here that the automobile, driven by Tidwell at the time of the accident, belonged to Tidwell, if he was using it in the performance of a duty he owed his employers. The ownership of the automobile is simply an incident in the performance of his service; the thing done by the servant in the performance of a duty to his master is the ultimate act, and not the instrument with which he performs the duty that makes the master liable.

It might be contended that in returning from Big Spring appellants contemplated that Tidwell would observe the rule of the road and not negligently run his automobile on the wrong side of the road, and, by doing so, injure a third person, and for that reason appellants would not be liable. But such is not the law. We need only refer to Railway Co. v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902; Railway Co. v. Cooper, 88 Tex. 607, 32 S. W. 517; Burnett v. Oechsner, 92 Tex. 588, 50 S. W. 562, 71 Am. St. Rep. 880, where it is held, in effect, that the master is held liable for the manner in which the servant performs the duty he is engaged to perform, if wrongful, and to the injury of another, although the master may have expressly forbidden the particular act.

We have discussed appellants' liability since, under the record, the facts are undisputed, and appellants' liability becomes one of law.

The motion is overruled.

Appellants request additional findings of fact. That motion is also overruled.