## MAGNOLIA PETROLEUM CO. v. GUFFEY.

### No. 1624—6577.

Commission of Appeals of Texas, Section B.
July 1, 1936.

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, and W. H. Francis, A. S. Hardwicke, and Russell Surles, all of Dallas, for plaintiff in error.

Scarborough, Ely & King, of Abilene, for defendant in error.

TAYLOR, Commissioner.

Grady Guffey, defendant in error, purchased at a Magnolia filling station at Abilene some oil and gas, had a casing repaired, and got from the proprietor, Bob Lawson, two or three dollars in money. He gave Lawson a check for about $8 to cover the items. Late in the afternoon of the same day he returned for the casing. Lawson drew a six-shooter on him, telling him the check was no good and that he must pay before he left the station, and ordered him into the station, where he was forced to sit. After holding Guffey in restraint for about two hours, Lawson permitted him to cross the street, where he obtained the money and returned and paid the check. Lawson did not then liberate him, but held him an hour or two longer to await arrival of peace officers, who, Lawson claimed, had a warrant for his arrest on another charge of giving a "cold check," an unrelated transaction, and requested that he be held for them. The officers failing to arrive, Guffey was permitted to go his way.

Guffey sued the Magnolia Company for damages for false imprisonment and recovered judgment. The Court of Civil Appeals reversed and remanded the case on the ground that the court erred in excluding Lawson's testimony to the effect that in detaining Guffey he was acting under instructions of the county attorney. 59 S.W.(2d) 174. Both parties applied for writ of error and both applications were granted; Guffey's being granted because of granting of the company's.

The company defended on the ground, first, that Lawson was not its agent, but an independent contractor; and, second, that, if he were the company's agent, it was not liable, because the undisputed evidence showed he was acting on his own account in endeavoring to collect the debt in the manner stated, and not within the scope of his authority as agent.

We are in accord with the holding of the Court of Civil Appeals that Lawson was the company's agent. It is necessary, in the view we take of the case, to discuss

only the question of whether Lawson's acts were within the scope of his authority as the company's agent.

▮ The Court of Civil Appeals holds correctly that liability in this case depends upon whether Lawson was acting within the scope of his authority in detaining and assaulting Guffey, but incorrectly that the test is whether or not the act in question was done by Lawson in pursuance of the company's business. While the rule stated is controlling in many cases, it is not the absolute test in cases involving the element here under consideration.

It may be admitted for present purposes that Lawson was acting in pursuance of a part of the company's business committed to him in attempting to collect the debt for the oil and gas sold.

We need not discuss the company's contention that the check belonged to Lawson in that it charged him with the bad checks he accepted in selling its products, and that he was therefore acting for himself in trying to collect his own debt; nor is there any question under the facts of an implied duty on his part to protect the company's property under his control. The property in question was the oil and gas sold to Guffey, which belonged to him after the sale.

The question for decision narrows in its final analysis to whether Lawson was impliedly authorized by the company to resort to the assault and false imprisonment of Guffey to enforce payment of the check. While the company had not expressly authorized him to do so, had it impliedly done so?

It is a general rule that the employer is liable for the wanton and malicious acts of his agent if committed by him while acting in the execution of his authority and within its scope. The difficulty here presented, however, is in determining whether the method employed by the agent may be deemed to have been within the implied scope of his authority.

Justice Gaines after stating in International & G. N. Ry. Co. v. Anderson, 82 Tex. 516, 17 S.W. 1039, 1040, 27 Am.St. Rep. 902, that the act of the agent must be done within the general scope of his authority and for the accomplishment of the purpose for which he is employed, says further: "But whether the act in question can be implied from the general authority conferred upon the servant must, in general, depend upon the nature of the service he is engaged to perform, and the circumstances of the particular case."

▮ Implications arise from facts. We find no facts in the record indicating that the company might have contemplated such conduct would be resorted to by Lawson, or that he would be guilty of such an act in the conduct of its business. The act must be something that is fairly and naturally incident to the business. The rule is clearly expounded in Kastrup v. Yellow Cab & Baggage Co., 129 Kan. 398, 282 P. 742, 743, 747. There a discharged cab driver had given his check to the company as a deposit to secure it in the payment of any sums he might owe. He stopped payment on the check, and, in an effort to make him pay, the superintendent of the company assaulted and beat him. The court says: "Authority, whether express or implied, is to be exercised in the usual and ordinary way; and authority to do an act is not implied from authority to do another act, unless the acts are so related to each other, or the circumstances are such, as to justify the inference that authority extended to doing the act in question. These directions for ascertaining authority are adapted from section 43, Comment, and Illustrations, Agency Restatement No. 1 of the American Law Institute. In applying them the ordinary experience, usages, and habits of men are to be taken into consideration, and authority to use force will not be implied when the business intrusted to the agent is such that use of force is not a natural or ordinary means or incident of transacting it."

The Supreme Court is committed to such an understanding of the rule by adoption of the opinion of the Commission of Appeals in Genovese v. Butt (Tex.Com.App.) 48 S.W.(2d) 587. There Kelley, the manager of a store, caused the arrest of a debtor to enforce payment for goods purchased by him on a worthless check. The question presented for decision was whether the mere fact that Kelley was manager of the store implied an authority in him from the company to initiate the criminal action against the debtor. The Commission say:

"We do not think it does. The unpaid check represented a debt which Genovese owed Butt for the goods purchased at the time the check was given. Conceding that, as manager of the store for Butt, Kelley had implied authority to collect the debt,

692

still such implied authority did not extend to the institution of a criminal prosecution, for the reason that a criminal prosecution is not a customary and proper means of collecting a debt due from one person to another."

Certainly it is as proper a means as that employed by Lawson. Authority to cause a customer's arrest to enforce payment of a worthless check can be more readily and fairly implied than authority to enforce payment with a six-shooter.

In Mayes v. American National Ins. Co. (Tex.Civ.App.) 16 S.W.(2d) 333, 335, in which a similar question was presented, Justice Higgins, speaking for the court, says: "In this record there are no circumstances upon which to base an inference that appellee in any wise authorized Pierce to use force or other coercive measures in collecting premiums, and we do not think it is to be implied." See Collette v. Rebori, 107 Mo.App. 711, 82 S.W. 552; Matsuda v. Hammond, 77 Wash. 120, 137 P. 328, 51 L.R.A.(N.S.) 920; 19 Tex.Jur. p. 577.

█ Lawson's acts for which Guffey recovered damages against the company were not within the scope of his employment by the company, and were not committed by virtue of any authority either express or implied on its part.

The trial court erred in not instructing a verdict in favor of the company. The judgment of that court and the Court of Civil Appeals is reversed, and judgment is here rendered for plaintiff in error.

Opinion adopted by the Supreme Court.